# MARILYN S. READER
ATTORNEY-AT-LAW
94 North Chatsworth Avenue
Larchmont, New York 10538
(914) 834-9569

ADMITTED TO PRACTICE IN
NEW YORK, PENNSYLVANIA AND
NEW JERSEY

May 7, 2013

<u>By ECF and facsimile to (914) 390-4152</u>:

Hon. Kenneth M. Karas
Judge, United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

   Re: <u>*United States v. FNU LNU aka Oscar Mario Garcia*, S2 10 CR 756 (KMK).</u>

Dear Judge Karas:

  I write this Pre-Sentence letter on behalf of my client. For the purposes of this letter, I will refer to my client as Mr. Garcia and also, the Yonkers Oscar. I respectfully request this letter be made part of the record. Mr. Garcia's sentence is scheduled for May 29, 2013. Mr. Garcia was convicted by a jury of one count of Unlawful Procurement of Citizenship or Naturalization (18 U.S.C. § 1425(a)); two counts of Fraudulently Obtaining a Passport (18 U.S.C. § 1542); one count of Social Security Fraud (42 U.S.C. § 408(a)(2)); and one count of Aggravated Identity Fraud (18 U.S.C. § 1028A).

  For the reasons explained more fully below, we respectfully request Your Honor to impose a non-Guideline sentence, for counts 1, 2, 3 and 5, of 8 months' incarceration to run concurrent with a consecutive term of 24 months' incarceration for Count 4, Aggravated Identity Fraud, 18 U.S.C. § 1028A. We respectfully submit that a sentence of 32 months' imprisonment is a just sentence in this case and one that is more than sufficient to meet the sentencing goals of 18 U.S.C. § 3553(a). When taking account of my client's personal history and characteristics, the nature and circumstances of my client's criminal conduct, as well as fashioning a sentence that promotes respect for the law, and engenders specific and general deterrence, then an aggregate term of 32 months' imprisonment for my client is appropriate. We further respectfully submit that a Guideline sentence of 39 months or more of imprisonment is much greater than necessary to fulfill these goals.

  In its Pre-Sentence Investigation Report ("PSR"), the Guidelines sentencing calculus results in offense level 14 and criminal history category I. The advisory sentencing range is imprisonment for 15 to 21months, plus a consecutive term of 24 months' imprisonment for a total range of 39 to 45 months' imprisonment. Probation recommends a term of 39 months' imprisonment.

Case 7:10-cr-00756-KMK   Document 29   Filed 05/07/13   Page 2 of 8

Letter to Hon. Kenneth M. Karas                                                                    May 7, 2013
Re:  *United States v. FNU LNU aka Oscar Mario Garcia*, S2 10 CR 756 (KMK)          Page 2
**Defendant's presentence letter**

**A below Guideline sentence is the norm in the SDNY:**

A sentence that is below the advisory Guideline range is the norm in the Southern District of New York.  In fiscal year 2012, 65.9% of sentences were below Guideline sentences.  41.1% of the below Guideline sentences were based on §3553 factors and its "parsimony clause."  Another 16.1% below Guideline sentences were based on §5K1.1 cooperation letters, 8.0% were based on downward departures, and .7% for unspecified reasons.  Only 33.5% were within the Guideline range.  *See*, *2012 Sourcebook of Federal Sentencing Statistics.*   The *2012 Sourcebook's* table entitled "Fiscal Year 2012 Guideline Sentences" is attached as Exhibit 1, and Table 26 entitled "Sentences Relative to the Guideline Range by Circuit and District, Fiscal Year 2012" is attached as Exhibit 1a.

This case is a hybrid of fraud and immigration crimes.  According to the *2012 Sourcebook*, in fiscal year 2012 the mean sentence length for fraud cases was 24 months' imprisonment and median sentence was 12 months.  In immigration cases, the mean term was 16 months, and the median term was 10 months.  This statistic includes probation sentences without imprisonment represented by zero months of imprisonment.  *See 2012* Sourcebook, Table 13, "Sentence Length In Each Primary Offense Category, Fiscal Year 2012," attached as Exhibit 2.

Table 14 shows the length of prison terms based according to the primary offense category.  The data for Table 14 consists only of sentences that imposed terms of imprisonment and excludes sentences of probation.  According to Table 14, for defendants who committed fraud and were in criminal history category I, the mean prison term was 32 months, and the median was 23 months.  For defendants convicted of immigration offenses, who are in criminal history category I, like my client Mr. Garcia, the mean term of imprisonment was 8 months and median was 4.  The mean and median values of Table 14 skew higher than those in Table 13 because the analysis omits probation sentences (computed as zero months in prison) from its data.  Table 14, *2012 Sourcebook*, "Length Of Imprisonment For Offenders In Each Criminal History Category By Primary Offense Category, Fiscal Year 2012" is attached as Exhibit 2a.

Also very significant, these statistics comprise sentences for complex security frauds, often involving millions of dollars; large conspiracies of phone and credit card frauds; as well as the more limited fraud case, such as defendant's convictions based on his fraudulently using the identity of a single person named Oscar Mario Garcia.  Although it is not specifically discussed in the *2012 Sourcebook*, since Aggravated Identity Fraud (18 U.S.C. § 1028A) is a fraud, the statistic for mean and median terms for fraud cases must include the § 1028A statutory requirement for a consecutive prison term of 24 months.

In the context of my client's conviction for discrete criminal conduct – assuming the identity of Oscar M. Garcia to become a U.S. citizen, obtain a U.S. Passport and receive $22,400 in Social Security disability – a prison term of 32 months comprising 8 months for fraudulently using the identity of another to become a citizen, obtain a passport and collect disability benefits followed by 24 months in prison for Aggravated Identity Fraud is a just sentence, and one that is sufficient and no greater than necessary to satisfy the sentencing goals of § 3553(a).

Letter to Hon. Kenneth M. Karas                                                               May 7, 2013
Re:  *United States v. FNU LNU aka Oscar Mario Garcia*, S2 10 CR 756 (KMK)          Page 3
**Defendant's presentence letter**

**Redact ¶¶38 & 39 and the top paragraph of page 16 of the PSR:**

We do not object to Probation's determination of offense level or criminal history category.  However, we request ¶¶38-39 and the top paragraph of page 16 of the PSR be redacted.  My client indicates he has never been arrested and that this reported 1977 arrest and conviction for Illegal Entry for someone named Oscar M. Garcia is not for him.  As such, these paragraphs should be deleted from the Probation report.  Moreover, the Government contends my client did not assume the identity of Oscar M. Garcia until about 1982.

**Defendant did not obstruct justice:**

Probation leaves to this Court the determination whether there is a two level enhancement for obstruction of justice pursuant to U.S.S.G. §3C1.1.  If two levels are added for obstruction of justice, then the result is offense level 16, criminal history category I, with an advisory sentencing range of 21 to 27 months' imprisonment, and a final range of 45 to 52 months' imprisonment after adding a consecutive term of two years' imprisonment for Aggravated Identity Fraud.

It may seem counter-intuitive to state that a defendant who testified and is convicted by a jury did not obstruct justice.  However, the crux of obstructing justice is a defendant's intention to mislead the court or jury.  In other words, if Mr. Garcia testified to mislead about who he believes himself to be, then he has obstructed justice.  But, my client truly believes he is Oscar Mario Garcia, and testified to what he believes is true and accurate.  Either he has been wrongfully convicted, or perhaps is delusional.  As defendant's attorney for several years, I have not observed factors to suggest he is mentally ill, for had I noted them I would have requested a psychiatric evaluation.

*Section 3C1.1* authorizes a two-level upward adjustment: "if . . . the defendant . . . attempted to obstruct or impede[] the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct."  As the Supreme Court has explained, an enhancement for obstruction of justice is appropriate when a defendant "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *United States v. Dunnigan, 507 U.S. 87, 94, 122 L. Ed. 2d 445, 113 S. Ct. 1111 (1993)*.  The Second Circuit stated in *United States v. Zagari, 111 F.3d 307 (2d Cir. 1997)*, that before applying an obstruction enhancement based on perjury, the sentencing court must find by a preponderance of the evidence "that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter." *Id. at 329*; *see also, U.S. v. Agudelo*, 414 F.3d 345 (2005).

Application note 2 of U.S.S.G. §3C1.1 underscores the limitations to applying a two-level enhancement for obstruction of justice.  "This provision is not intended to punish a defendant for the exercise of a constitutional right . . . In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty

Case 7:10-cr-00756-KMK   Document 29   Filed 05/07/13   Page 4 of 8

Letter to Hon. Kenneth M. Karas                                                May 7, 2013
Re:  *United States v. FNU LNU aka Oscar Mario Garcia*, S2 10 CR 756 (KMK)          Page 4
**Defendant's presentence letter**

memory, and thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." Mr. Garcia exercised his constitutional right to testify at his trial and, at worst, testified according to his delusional, but sincere, belief.

Proof that my client, Mr. Garcia, firmly believes himself to be Oscar Mario Garcia is demonstrated by his refusal before trial to plead guilty under circumstances that would most likely have resulted in a time served sentence. During a short window of opportunity before trial but after the defense received 3500 material and notice that Oscar Garcia's sister, Irma Mirtala Garcia Tijerina, would be testifying, defendant had an opportunity to plead guilty to the original indictment which did not include a §1028A count for Aggravated Identity Fraud. The Guideline advisory range for such a plea would likely have been 15 to 21 months in prison, or less if he were afforded credit for acceptance of responsibility. My client refused to accept this plea opportunity for a possible sentence of time served, or at most, for only one year more than the time he already had served. Despite counsel's efforts several times with the assistance of a Spanish interpreter and also Spanish speaking investigators to explain the plea offer and the more favorable sentencing scenario than he would have after a conviction on the anticipated superseding indictment with a §1028A count, my client categorically refused the offer. He refused – insisting he is Oscar M. Garcia and believing the anticipated witness Irma, who is Mr. Garcia's sister, would embrace the defendant as her brother. It is plainly apparent that when the defendant testified, he did not seek to intentionally mislead the court or the jury. He testified to facts he truly believes.

In my lengthy experience as a criminal defense attorney, it is exceedingly uncommon for a defendant, who knows he is guilty of the crime and knows the evidence against him is strong, to refuse to plead guilty. This is especially so when he is aware he has a decent shot at a sentence that amounts to time served.

**Defendant's personal history and characteristics:**

My client is 58 years old, and has no prior convictions. He has never been arrested before these charges. Throughout his life, Mr. Garcia has been a very hardworking man, dedicated to his family. He also suffers from a serious heart condition. In 2009, he was debilitated by a serious heart attack. His doctors entered him into an experimental cardiac treatment program. Then in the summer of 2010, just three months before his arrest for these charges, he underwent emergency triple bypass cardiac at Columbia Presbyterian Hospital in New York City.

My client was a Mexican peasant who came to the United States for a better life. After coming to the United States from Mexico, he lived and worked principally in Texas for many years. First he worked as a seasonal harvester in Texas and California, and in construction during the winter. Eventually, he began to work full time as a painter and plasterboard installer for construction companies. In 1986 he met and fell in love with Olga Marina Murillo, who moved with him to Yonkers, New York in approximately 1988. Olga has three children, who were living in Honduras. My client contributed to their support and although he visited them only once in Honduras, loves them as his own children. In November 1996, Olga and my client

Case 7:10-cr-00756-KMK   Document 29   Filed 05/07/13   Page 5 of 8

Letter to Hon. Kenneth M. Karas                                              May 7, 2013
Re:  *United States v. FNU LNU aka Oscar Mario Garcia*, S2 10 CR 756 (KMK)          Page 5
**Defendant's presentence letter**

married.  Olga testified at the trial, and her great love and respect for her husband was very evident.  As she rose to the witness box she smiled at and threw a kiss to her husband, whom she has known only as Oscar M. Garcia.  Olga also suffers serious medical ailments, which make it difficult for her to cope with daily chores.  Since recovering from a coma[1] many years ago, she has relied tremendously on her husband to help her cope with daily needs, and to financially support her.

In Yonkers, New York, Mr. Garcia has worked diligently at several jobs at the same time.  For each company, he is dispatched to paint and remodel residences.  In about 2001, he became the superintendent for three apartment buildings on Willow Street in Yonkers, New York.  As superintendent, he and Olga received a discount on their rent for an apartment in one of the buildings.  Even as superintendent, he continued to hold other jobs as a painter and remodeler to earn sufficient income to support his family.  Some of these jobs were off the books, and others that were on the books contributed to his social security under the name and social security number of Oscar M. Garcia.  My client reports he always asked his employers to pay him on the books, to declare his income and contribute to social security, but many refused.

Numerous letters are submitted in support of Mr. Garcia.  They are from the following people:

| Exhibit # | Name of person writing letter | Relationship to defendant | Date of letter |
|---|---|---|---|
| 3 | Reverend Glendon Wallace | Reverend | 9/10/2012 |
| 4 | Caridad Cuello | Tenant | 11/29/2012 |
| 5 | Karen Murillo | Step-daughter | 1/7/2013 |
| 6 | Ignacio and Elizabeth Tellez | Friends | 10/19/2012 |
| 7 | Maria Figueroa | Friend | 1/7/2013 |
| 8 | Marilyn Lucca | Friend | 1/9/2013 |
| 9 | Luz Diaz | Friend | 10/20/2012 |
| 10 | Antera Gonzalez | Friend | 10/19/2012 |
| 11 | Marwan Daoud | Friend | 10/23/2012 |
| 12 | Nataly Diaz | Friend | 10/18/2012 |
| 13 | Yohanna Lopez | Friend | 11/6/2012 |
| 14 | Juan Beltran Lopez | Friend | 10/31/2012 |
| 15 | Bertha Gomez | Friend | 10/19/2012 |

While living in Yonkers, Oscar and Olga became active in their church and feel very close to their reverend and fellow congregants.  They have even become godparents to at least one child born to a congregant friend.  Defendant has been a productive and constructive member in both his secular and sectarian communities.  All speak very highly of the defendant.  Maria Figueroa has known my client for ten (10) years and considers him "an honest and very polite man."  She cannot believe "what happened to him" and "was in shock" to learn of his legal

---

[1]  Ms. Olga Garcia contracted parasites from eating pork products when she lived in Honduras.  Years later, after she moved to Yonkers, New York, the parasites infiltrated brain membranes and she fell into a coma.

Case 7:10-cr-00756-KMK   Document 29   Filed 05/07/13   Page 6 of 8

Letter to Hon. Kenneth M. Karas                                                May 7, 2013
Re:  *United States v. FNU LNU aka Oscar Mario Garcia*, S2 10 CR 756 (KMK)           Page 6
**Defendant's presentence letter**

difficulties. Karen Murillo is Olga's daughter and my client's stepdaughter. She has known her stepfather since about 1986, and knows he is "an honest person, very hardworking. He always helps out the community of Yonkers." Ignacio and Elizabeth Tellez have known my client for seven (7) years. They met in church. They also praise my client as "a hard working and honest person." Yohanna Lopez, Luz Diaz, Antera Gonzalez, Marwan Daoud, and Nataly Diaz have each known my client since about 1990. They too met him in church. They each describe him as a "man of God" who is always ready to help his friends and fellow congregants as best he can. Marilyn Lucca works for Catholic Charities. Since about 2009, the defendant has been one of her clients. She notes "Oscar has always been a well manner(ed) individual and has worked." Caridad Cuello is a tenant in one of the buildings where Mr. Garcia was the superintendent, and has known him for three (3) years. She has "a positive impression" of the defendant because he treated her with respect and promptly fixed problems in her apartment, regardless of the time of day. This is indeed high praise, for how often do tenants praise their building's superintendent?

**Defendant is unlikely to be a recidivist:**

Due to factors such as his age, marital status and conviction for essentially fraudulent conduct, it is very unlikely Mr. Garcia will again violate the law. According to a study by the U.S. Sentencing Commission, "[r]ecidivism rates decline relatively consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates. . . . Among all offenders under age 21, the recidivism rate is 35.5 per cent, while offenders over age 50 have a recidivism rate of 9.5 per cent." See, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 12. For a person in criminal history category I, like defendant, the rate is even lower at 6.2%. Moreover, defendants convicted of fraud are among those least likely to commit other crimes. The study's tables measuring age and recidivism rates, and measuring offense characteristics and recidivism are attached as Exhibits 16 and 17.

Moreover, Mr. Garcia expects to be deported, and plans to reconstitute his life in Mexico with Olga.

**The crime:**

The defendant was convicted of various frauds consisting of becoming a naturalized U.S. citizen; applying for and obtaining a U.S. passport in 2000, and again in 2010; after suffering a heart attack, applying for and receiving Social Security Disability benefits by fraudulently using the identity of another person named Oscar Mario Garcia; and Aggravated Identity Fraud for fraudulently using the identity of another person (Oscar Mario Garcia) to become a citizen, obtain a passport, and receive disability benefits. According to testimony at the trial and my calculations of the disability checks sent to my client, the defendant received a total of $22,399.66. A spreadsheet entitled "SSI Payments" is attached as Exhibit 18. But, through wages withholdings over the years from various jobs, Yonkers Oscar contributed $2,904.47. A table entitled "Defendant's Contributions to Social Security between 1998 and 2010" is attached as Exhibit 19. The resulting total loss is $19,495.19.

Case 7:10-cr-00756-KMK   Document 29   Filed 05/07/13   Page 7 of 8

Letter to Hon. Kenneth M. Karas                                                                May 7, 2013
Re:  *United States v. FNU LNU aka Oscar Mario Garcia*, S2 10 CR 756 (KMK)          Page 7
**Defendant's presentence letter**

**Defendant's criminal history:**

Mr. Garcia has no prior criminal record, and his Guideline criminal history category is I. As stated *supra*, the defendant was never arrested for illegal entry, was never convicted and never served a sentence of five years' probation.  We respectfully request ¶¶38 and 39 and the top paragraph on page 16 be redacted from the PSR as the details in those paragraphs do not relate to the defendant.

**A just and reasonable sentence:** *Booker*, *Gall* and *Rita* **cases:**

As this Court is well aware, the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) restored substantial deference to a district court's determination of an appropriate sentence. As the Supreme Court held in Gall, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *United States v. Gall*, 552 U.S. 38, 128 S. Ct. 586, 596 (2007) (emphasis added), citing *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456 (2007). After considering the applicable Guidelines range, the court should consider "all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Id. at 49-50; 596-97, citing *Rita v. United States*, 551 U.S. 338. As the Second Circuit held in *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005), "[n]ow, with the mandatory duty to apply the Guidelines excised, the duty imposed by section 3553(a) to 'consider' numerous factors acquires renewed significance."

Section 3553(a) sets forth the guiding principle of sentencing, commonly referred to as the "parsimony clause," by stating: "The court shall impose a sentence sufficient, but not greater than necessary" to accomplish the purposes of sentencing set forth in § 3553(a)(2). Section 3553(a)(1) first directs the court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Section § 3553(a)(2) requires the consideration of the general purposes of sentencing, including: "the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Fundamentally, under *Booker*, *Crosby*, *Gall*, *Rita* and their progeny, the district court's primary concern must be to impose a just sentence.

**Conclusion:**

My client is a hardworking, kind, and generous man.  He is poorly educated, but has gained the skills and discipline to be the superintendent of three apartment buildings in Yonkers, New York for at least ten years.  He's a loving and caring husband.  For him, this conviction is a nightmare.  Either he is Oscar Mario Garcia and has been wrongfully convicted, or else he truly believes he is Oscar Mario Garcia.  The emotional toll for him is the same whether he is Oscar

Case 7:10-cr-00756-KMK   Document 29   Filed 05/07/13   Page 8 of 8

Letter to Hon. Kenneth M. Karas                                          May 7, 2013
Re:  *United States v. FNU LNU aka Oscar Mario Garcia*, S2 10 CR 756 (KMK)        Page 8
**Defendant's presentence letter**

M. Garcia or, though perhaps delusional, truly believes himself to be Oscar M. Garcia.

We respectfully request Your Honor to impose a below Guideline sentence of eight (8) months on Counts 1, 2, 3 and 5, and a consecutive term of 24 months' imprisonment for Count 4, Aggravated Identity Fraud. We further request Your Honor to recommend to the U.S. Bureau of Prisons that the defendant be designated to FCI Otisville or a facility near Bronx, New York where his wife Olga resides, and to alert the BOP to be vigilant of defendant's heart disease.

On behalf my client, I thank Your Honor for your thoughtful and caring consideration.

                Very truly yours,

                Marilyn S. Reader

MSR:hs
Enclosures

cc:    AUSA Rebecca Mermelstein (by ECF)
       P.O. Sandra Campbell (by email to Sandra_Campbell@nysp.uscourts.gov)
       Mr. Oscar M. Garcia